IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | | |
|---|---|---|
| BONNIE D. FAULK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:15-cv-04146-NKL |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner | ) | |
| of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER**

Plaintiff Bonnie Faulk seeks review of the Administrative Law Judge's decision denying her application for Social Security Disability Insurance benefits. For the following reasons, the decision of the Administrative Law Judge ("ALJ") is reversed, and the case is remanded for reconsideration.

**I.  Background**

   **A.  Medical History**

Faulk alleges disability beginning on November 7, 2011. Prior to her onset date, Ms. Faulk worked as a waitress, a fast-food clerk, a cashier/food server, and a convenience store clerk.

In August 2011, Ms. Faulk began treatment at the University of Missouri Rheumatology Clinic for chronic pain in her upper arms, back, hip, buttocks, and knees. In November, Nurse Practitioner Deanna Davenport diagnosed Ms. Faulk with

1

fibromyalgia after examination revealed eighteen fibromyalgia tender points. On January 18, 2012, Ms. Faulk returned to see NP Davenport complaining of worsening pain between her shoulder blades, fatigue, chronic diarrhea, numbness and tingling in her legs, and pain in her joints and muscles. The examination revealed diffuse tenderness with eighteen fibromyalgia tender points and some right hip pain on rotation. NP Davenport prescribed Savella to Ms. Faulk.

On June 22, 2012, NP Davenport completed a Rheumatoid Arthritis Impairment Questionnaire which was endorsed by Dr. Celso Velazquez. Ms. Faulk was diagnosed with fibromyalgia and depression. There was evidence of pain in her neck, shoulders, hips, back, pelvis, and knees, and she was noted to have a reduced range of motion in her hips and neck, trapezius and lumbar muscle spasms, diffuse tenderness to touch, and eighteen fibromyalgia tender points. The form indicated that these limitations had been present since July 8, 2010.

In addition to the above limitations, NP Davenport and Dr. Velazquez also opined that if Ms. Faulk was placed in a competitive work environment on a sustained basis, she could only sit for one hour total and stand and/or walk for up to one hour in an eight-hour workday. She could occasionally lift and carry up to five pounds but was incapable of tolerating even low work stress because minor changes to her activities and schedule could significantly increase her depression. The treaters estimated that Ms. Faulk needed rest breaks lasting between fifteen and twenty minutes once every one to two hours during an eight hour work day. They opined that she would be absent from work more

than three times a month and "could only work a day (if that) before flaring bad enough to require a sick day."  [Tr. 476].

On April 30, 2012, Ms. Faulk began treatment with Dr. Ravinder Arora.  Dr. Arora diagnosed fibromyalgia and prescribed Neurontin.  In May, he increased Ms. Faulk's dose of Neurontin and prescribed Fioricet.  Over the next few months, Dr. Arora changed Ms. Faulk's medications multiple times to try to get her pain under control.

On January 15, 2013, Ms. Faulk began to see Dr. Miriam Borden.  She complained of pain in her lower back and between her shoulders, poor sleep, fatigue, diarrhea, and tinging in her fingers and toes.  Examination revealed eight of eighteen tender points.  Dr. Borden adjusted Ms. Faulk's medications consistent with her diagnosis.  On November 11, 2013, Dr. Borden completed a Fibromyalgia Impairment Questionnaire and found that Ms. Faulk met the American Rheumatological criteria for fibromyalgia.  She also diagnosed Ms. Faulk with IBS, PTSD, personality disorder, bipolar disorder, and sleep apnea.  Dr. Borden agreed with other treatment providers who stated that Ms. Faulk is not a malingerer.

Dr. Borden further opined that Ms. Faulk could lift and carry ten pounds frequently and up to twenty pounds occasionally and could sit for six hours and stand/walk for four hours in an eight-hour workday.  She further stated that Ms. Faulk would need a fifteen-minute rest break approximately every two hours during the day, and would likely be absent from work about two to three times a month due to her impairments and treatment.

On April 23, 2012, Ms. Faulk transferred to a different health care facility and came under the care of Dr. Pulliam. Dr. Pulliam treated her for a UTI and diagnosed trochanteric bursitis causing right hip pain and noted that her medical history suggested fibromyalgia. He referred her to a rheumatologist for evaluation and treatment.

Following the ALJ's unfavorable decision, Dr. Pulliam completed a Multiple Impairment Questionnaire on January 6, 2014. In the form Dr. Pulliam diagnosed fibromyalgia, chronic mechanical back pain, sleep disorder, chronic anxiety, PTSD, sleep apnea, and IBS. He gave Ms. Faulk a poor prognosis and opined that she could sit for only thirty to sixty minutes and stand/walk for one hour in an eight-hour workday. The doctor stated that Ms. Faulk cannot tolerate even a low-stress work environment due in large part to her anxiety. He estimated that Ms. Faulk would miss work more than three times a month due to her impairments.

### B. ALJ Decision

The ALJ denied Ms. Faulk's request for disability benefits, concluding that she had the Residual Functional Capacity ("RFC") to engage in substantial gainful activity. The ALJ concluded that despite Ms. Faulk's severe impairments of trochanteric bursitis, obesity, fibromyalgia, bipolar disorder, depression, and cannabis dependence, she retained the following RFC:

> [T]o perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that the claimant can sit for six of eight hours per day; stand and walk for six of eight hours per day; can lift 20 pounds occasionally and ten pounds frequently; cannot climb ladders, ropes, or scaffolds; can occasionally climb stairs and ramps, balance, stoop, kneel, crouch and crawl; is limited to unskilled work and can have

4

>only occasional interaction with co-workers, supervisors and the public.

[Tr. 73].

In determining the RFC, the ALJ considered the medical evidence of the record, as well as Ms. Faulk's testimony at the administrative hearing regarding the extent of her symptoms. At the administrative hearing, Ms. Faulk testified that she was unable to work due to her fibromyalgia, which is aggravated when she sits and stands. She stated that to relieve her pain she lays down for six or seven hours during the day. She is able to lift and carry a gallon of milk, but is unable to sit for more than 30 minutes at a time. She stated that her depression causes her to isolate herself approximately three days per week, and her medications make her "extremely groggy." She only leaves the house about once a week, and suffers from daily diarrhea and IBS flare-ups approximately two days per week.

Following this testimony, the ALJ questioned a vocational expert regarding Ms. Faulk's RFC. The vocational expert testified that a person with Ms. Faulk's RFC would be able to perform jobs such as a marking clerk, folding machine operator, and router. [Tr. 78]. The vocational expert stated that she would not be able to perform competitive full-time work if she would need to lie down for two hours during an eight-hour work period or if she would miss work one day per week.

## II.    Standard of Review

"[R]eview of the Secretary's decision [is limited] to a determination of whether the decision is supported by substantial evidence on the record as a whole. Substantial

evidence is evidence which reasonable minds would accept as adequate to support the Secretary's conclusion. [The Court] will not reverse a decision 'simply because some evidence may support the opposite conclusion.'" *Mitchell v. Shalala*, 25 F.3d 712, 714 (8th Cir. 1994) (citations omitted). Substantial evidence is "more than a mere scintilla" of evidence; rather, it is relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Gragg v. Astrue*, 615 F.3d 932, 938 (8th Cir. 2010).

## III. Discussion

Ms. Faulk argues that the ALJ erred in four ways: (1) failing to properly weigh the medical opinion evidence and properly determine her RFC, (2) failing to properly evaluate her credibility, (3) relying on flawed vocational expert testimony, and (4) failing to adequately consider her obesity. She also argues that the Appeals Counsel erred in failing to remand the case due to Dr. Pulliam's new opinion.

### A. Weight Assigned to Medical Opinions and RFC Determination

The record contains treatment records and opinions from numerous treating doctors and other health practitioners, including NP Davenport, Dr. Velazquez, and Dr. Borden. In evaluating the record, the ALJ assigned no weight to the opinions of NP Davenport and did not indicate what weight was given to the opinion of the co-signing physician, Dr. Velazquez. He gave little weight to the opinions of Dr. Borden because he concluded that there were no treatment notes from Dr. Borden in the record and the available progress notes did not record any specific limitations for Ms. Faulk.

A treating source's opinion must be given controlling weight if it is well-supported by medically acceptable diagnostic techniques and is not inconsistent with the other

6

substantial evidence in the record. SSR 96-2p, 1996 WL 374188 (July 2, 1996); *see also Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005). Even when it is inappropriate to accord the treating physician's opinion controlling weight in light of the record, the opinions "should not ordinarily be disregarded and [are] entitled to substantial weight." *Singh v. Apfel*, 222 F.3d 448, 452 (8th Cir. 2000). If the ALJ decides to discount a treating physician's opinion, he should "give good reasons" for his decision. *Dolph v. Barnhart*, 308 F.3d 876, 878 (8th Cir. 2002).

Defendant argues that none of these opinions are entitled to treating source status because Dr. Borden only saw Ms. Faulk two times before rendering an opinion on her functional capacity and NP Davenport is not a doctor and is therefore not entitled to receive deference. However, the record does not indicate that the ALJ perceived either Dr. Velazquez's opinion or Dr. Borden's opinion to have been rendered by less than a treating source, which entitles the opinions to at least some deference. Moreover, as discussed below, the ALJ's reasons for discounting these sources were based on an incomplete review of the record. The Court cannot conclude that substantial evidence supports the ALJ's decision given these errors. While the brevity of Dr. Borden's treatment relationship with Ms. Faulk may give reason to accord the opinion less deference, *see* 20 C.F.R. §§ 404.1527(d)(2)(i) and 416(d)(2)(i), the ALJ based his decision on the fact that he found "no treatment notes from Dr. Borden" in the record. [Tr. 77]. The ALJ also failed to address the import of Dr. Velazquez's signature on NP Davenport's opinion, making it impossible for the Court to determine whether the ALJ's decision to discount the opinion was reasonable or not.

The record reveals that the ALJ's consideration of the record was incomplete and that the ALJ overlooked crucial evidence noted to be missing in the ALJ's opinion. For example, the ALJ stated in his opinion that "[t]he opinion of FNP Davenport incorporated tender point analyses that are absent in her treating records" [Tr. 76]; however, NP Davenport's treating records indicate at multiple points that Faulk experienced "diffuse tenderness with 18/18FMS tender points present." [Tr. 405, 410-11]. Dr. Borden also noted that Faulk exhibited "8/18 tender points for fibromyalgia." [Tr. 528]. The record from Dr. Borden is notable because it both contains evidence to support Ms. Faulk's fibromyalgia diagnosis and contradicts the ALJ's finding that Ms. Faulk's file contained "no treatment notes" from Dr. Borden. [Tr. 77]. The record contains at least two treatment notes from Dr. Borden along with the Fibromyalgia Impairment Questionnaire Dr. Borden completed.[1] [Tr. 526-28, 570]. These errors constitute more than an "arguable deficiency in opinion-writing technique," and suggest that the ALJ's review of the record was cursory at best. *Carlson v. Chater*, 74 F.3d 869, 871 (8th Cir. 1996). The Court cannot conclude that the ALJ's decision was based on substantial evidence of the record given the ALJ's failure to accurately evaluate the record and the indications in the opinion that it was based on a perceived lack of evidence which was actually present in

---

[1] Despite giving Dr. Borden's opinion little weight the ALJ adopted large segments of it, but rejected with no explanation Dr. Borden's opinions regarding the number of breaks and absences Ms. Faulk would require. That these opinions were rejected is notable as the vocational expert testified that a person requiring one absence per week or significant break time during the day could not maintain substantial gainful employment. [Tr. 107]. On remand, the ALJ should be careful not to pick and choose from the record in formulating Ms. Faulk's RFC, and should explain why any opinions such as Dr. Borden's were rejected.

the record.  Remand is necessary in order for the ALJ to fully and accurately evaluate the contents of the record and Ms. Faulk's medical history.

Rather than relying on the opinions of Dr. Borden and NP Davenport/Dr. Velazquez, the ALJ relied on treatment records from Dr. Ravinder Arora, Dr. David Pulliam, Dr. Brian Parsells, and an opinion from Dr. Mark Altomari, to conclude that Ms. Faulk is capable of functioning as set out in the RFC.  The treatment records from Dr. Arora and Dr. Parsells were not accompanied by any opinions regarding Ms. Faulk's functional abilities.[2]  However, the fact that the treatment notes were unaccompanied by opinions regarding Ms. Faulk's functional capacity or limitations does not mean that her symptoms are not severe or debilitating.  *See Leckenby v. Astrue*, 487 F.3d 626, 633 (8th Cir. 2007) (noting that the absence of functional limitations in a patient's records does not necessarily mean that the patient has no limitations).  Moreover, the ALJ was not entitled to interpret these records to reach his own conclusions.  *Nevland v. Apfel*, 204 F.3d 853, 858 (8th Cir. 2000).  At the time the ALJ was rendering his opinion, Dr. Borden and NP Davenport/Dr. Velazquez had rendered the only two opinions in the record regarding Ms. Faulk's physical functional abilities.  As the ALJ rejected these opinions, the record contains no evidence to support the specific RFC determination.  On remand the ALJ should re-weigh the evidence in the record and discuss the specific medical opinions and records which support the RFC determination.

---

[2] Dr. Pulliam's treatment notes were also initially without an opinion.  However, Dr. Pulliam has since rendered an opinion regarding Ms. Faulk's functional abilities, which is discussed below.

The only opinion in the record given significant weight by the ALJ was Dr. Altomari's opinion that Ms. Faulk was capable of functioning without significant limitations. However, Dr. Altomari was not Ms. Faulk's treating physician, but performed a single evaluation of the claimant in March 2012 to complete a Mental Residual Capacity form and Psychiatric Review Technique form. Given the extensive evidence from Ms. Faulk's treatment providers which suggested that Ms. Faulk was incapable of functioning without significant limitations, the ALJ was not entitled to rely on this opinion while largely ignoring and at times mischaracterizing the remainder of the record. Moreover, as Dr. Altomari opined only on Ms. Faulk's mental limitations and did not consider her physical capacity this opinion was insufficient for the ALJ to reach a complete RFC decision.

On remand, the ALJ should also be careful to account for all of Ms. Faulk's severe impairments, including her obesity. SSR 02-1P requires that obesity be specifically considered by the ALJ when determining a claimant's RFC, and recognizes that obesity may exacerbate other conditions. In this case, the ALJ did not reference Ms. Faulk's obesity at all beyond identifying it as a severe impairment. *Cf. Wright v. Colvin*, 789 F.3d 847, 855 (8th Cir. 2015) (concluding that the ALJ's discussion of the claimant's obesity was sufficient where the ALJ "explicitly stated he 'considered the combined effects of the claimant's obesity with the claimant's other impairments when determining that he retains the ability to perform a range of sedentary work within the limitations identified.'"). On review of Ms. Faulk's record, the ALJ should specifically discuss the effect of Ms. Faulk's obesity on her functional capacity.

10

Case 2:15-cv-04146-NKL   Document 11   Filed 04/01/16   Page 10 of 14

## B. Credibility Determination and Vocational Expert Testimony

As the Court has already determined that it is necessary for the decision to be remanded for the ALJ to re-weigh Ms. Faulk's treatment providers' opinions based on the entirety of the record, it is unnecessary to consider whether remand would be warranted based on the ALJ's credibility determination or the questions posed to the vocational expert.

However, the ALJ should be careful on remand to evaluate Ms. Faulk's credibility in light of the entirety of the evidence and not pick and choose from the record. Specifically, the ALJ should avoid relying on evidence of intermittent drug-seeking behavior to conclude that Ms. Faulk's symptoms were exaggerated, given the numerous doctors' opinions that she faced significant limitations despite any drug seeking behavior. The ALJ should also be careful not to disregard Ms. Faulk's complaints of pain and fibromyalgia based on a lack of medical test results, as fibromyalgia cannot be documented by objective testing. *Brosnahan v. Barnhart*, 336 F.3d 671, 672 n.1 (8th Cir. 2003) ("Diagnosis [of fibromyalgia] is usually made after eliminating other conditions, as there are no confirming diagnostic tests."); *see also Tilley v. Astrue*, 580 F.3d 675, 681 (8th Cir. 2009) ("Fibromyalgia is an elusive diagnosis; its cause or causes are unknown, there's no cure, and, of greatest importance to disability law, its symptoms are entirely subjective." (quotation omitted)). Nor is Ms. Faulk's ability to undertake some activities of daily living such as walking a quarter of a mile a day, caring for her dog, and doing laundry and vacuuming necessarily evidence of her ability to maintain substantial gainful activity. *Brosnahant*, 336 F.3d at 677 ("[W]e have held, in the context of a fibromyalgia

11

case, that the ability to engage in activities such as cooking, cleaning, and hobbies, does not constitute substantial evidence of the ability to engage in substantial gainful activity."). Finally, the ALJ should not rely on individual records suggesting that Ms. Faulk's mental status was temporarily improved to conclude that she is capable of substantial gainful employment, as bipolar disorder and depression are generally characterized by brief periods of relief over time. On remand, the ALJ should base his opinion on the entirety of the record as educated by the doctors' opinions entitled to weight, not individual pieces of evidence suggesting that Ms. Faulk's impairments do not completely incapacitate her.

On remand, the ALJ should also be careful to thoroughly capture Ms. Faulk's limitations in any hypothetical posed to the vocational expert, but need not outline every limitation if the hypothetical "adequately captures the impairments at issue." *Howard v. Massanari*, 255 F.3d 577, 582 (8th Cir. 2001); *see also Roe v. Chater,* 92 F.3d 672, 675 (8th Cir. 1996) (noting that the ALJ "need not use specific diagnostic or symptomatic terms where other descriptive terms can adequately define the claimant's impairments.").

### C. New Evidence Before Appeals Counsel

In January 2014, Dr. Pulliam rendered a new opinion regarding Ms. Faulk's limitations. [Tr. 574-81]. He stated that these limitations have been present since at least 2012. *Id.* This opinion was rendered after the ALJ made his decision in December 2013, and therefore was not considered before Ms. Faulk submitted this opinion to the Appeals Council, which accepted the opinion and entered it into the record.

Dr. Pulliam opined in the January 2014 Multiple Impairment Questionnaire that Ms. Faulk can sit for thirty to sixty minutes and stand/walk for one hour in an eight-hour workday. He stated that Ms. Faulk would sometimes need to take unscheduled rest breaks for approximately fifteen minutes on an hourly basis, and would likely miss work more than three times per month due to her impairments. [Tr. 574-81]. These limitations are far more restrictive than the RFC provided by the ALJ. Moreover, the opinion responds to the ALJ's concern that "Dr. Pulliam has not suggested at any time that the claimant was unable to work, and has not described any work-related limitations. There is no function-by-function physical capacity analysis from Dr. Pulliam." [Tr. 75].

The Court need not decide whether Dr. Pulliam's new opinion alone constitutes grounds for remand, as it has already concluded that remand is necessary due to the ALJ's failure to appropriately consider and weigh other evidence of the record. However, Dr. Pulliam's opinion is clearly material as the ALJ noted in his initial decision that Dr. Pulliam "ha[d] not suggested at any time that the claimant was unable to work, and ha[d] not described any work-related limitations." [Tr. 75]. Therefore, the ALJ should carefully consider the contents of Dr. Pulliam's January 2014 opinion when reviewing the case on remand.

## IV. Conclusion

For the reasons set forth above, the ALJ's decision is reversed, and the case is remanded for reconsideration as set forth above.

/s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

13

Dated:  April 1, 2016
Jefferson City, Missouri